**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Elizabeth A. O'Brien,

  Plaintiff              Case No. 3:10CV688

  v.                   **ORDER**

Michael Navarre, *et al.*,

  Defendants


   This is a case alleging civil rights violations under 42 U.S.C. §1983 and the Fourth Amendment to the United States Constitution. Plaintiff, Elizabeth A. O'Brien, alleges: 1) Toledo police officers falsely arrested her; 2) defendant, Officer David Mosiniak injured her through use of excessive force; 3) defendants Chief Michael Navarre and Sergeant Michael McGee failed adequately to train and/or supervise the arresting officers; and 4) the City of Toledo is liable because the defendants implemented a municipal policy.

   Defendants move for summary judgment, asserting: 1) there was probable cause to arrest O'Brien; 2) O'Brien fails to provide direct evidence of Officer Mosiniak's participation in her arrest or any resulting injuries; 3) O'Brien fails to show insufficient training or supervision on the part of Chief Navarre or Sergeant McGee; and 4) none of the defendants' actions involved implementation of municipal policy. [Doc. 14].

   Jurisdiction exists under 28 U.S.C. §§ 1331.

For the reasons that follow, the defendants' motion for summary judgment shall be granted.

**Background**

On the afternoon of October 15, 2005, a group of neo-Nazis gathered in Toledo, Ohio. Members of the public came to the demonstration to protest the neo-Nazis' presence. The demonstration quickly escalated into a riot, injuring both demonstrators and police officers.

On December 10, 2005, a small group of neo-Nazis returned to Toledo to deliver speeches at the Government Center.

In an attempt to prevent another riot, Chief Navarre sought a court order from the Lucas County, Ohio, Court of Common Pleas barring the neo-Nazis from demonstrating. The court denied Chief Navarre's request.

As a further effort to avoid another riot, Chief Navarre assembled about 700 officers from surrounding jurisdictions to patrol the Government Center. The police officers formed barricades of sawhorses between the neo-Nazis and counter-demonstrators, thereby physically separating the groups.

Police on foot patrol monitored the barricades and when necessary, arrested demonstrators. About twenty-five mounted officers also monitored the area and helped to maintain the physical divide between the demonstrators.

Sergeant McGee was one of those mounted officers. A demonstrator struck Sergeant McGee's horse from the left side and then disappeared into the crowd.

Later, Officer William Noon, an officer on foot patrol, told Sergeant McGee that he had found the demonstrator who had struck McGee's horse. Officer Noon pointed at O'Brien, and yelled "that's the one that hit your horse." [Doc. 14-1 at 21]. Sergeant McGee has testified that O'Brien

2

was dressed in a similar manner as the assailant.

It is uncontested that O'Brien did not hit Sergeant McGee's horse. Three police officers, however, approached O'Brien, forced her to the ground and allegedly tased her sixteen times. Following O'Brien's arrest, she was taken to the Lucas County Jail. She remained there for nine hours before being released. Though O'Brien was charged with disorderly conduct, the city prosecutor dismissed the charges against her.

O'Brien has not identified any of the officers that tasered or arrested her. The parties do not contest that Officer Mosiniak did not tase O'Brien. Officer Mosiniak's badge number, however, does appear on O'Brien's crime report. Officer Mosiniak testified that he did not make O'Brien's police report and that the signature is not his.

Although O'Brien fails to claim that the defendants were involved with her arrest, she alleges they committed the acts giving rise to this lawsuit.

O'Brien filed suit in this court on April 30, 2008. She thereafter voluntarily dismissed her complaint. She later re-filed a complaint in state court on March 10, 2010. The defendants removed the case to this Court on April 1, 2010.

## Discussion

### Standard of Review

A party is entitled to summary judgment on motion under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set

3

forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleading" and submit admissible evidence supporting its position. *Celotex, supra*, 477 U.S. at 324.

In deciding a motion for summary judgment, I accept the opponent's evidence as true and construe all evidence in the opponent's favor. *Eastman Kodak Co. v. Image Tech. Servs.*, Inc., 504 U.S. 451, 456 (1992). The movant can prevail only if the materials offered in support of the motion show there is no genuine issue of a material fact. *Celotex, supra*, 477 U.S. at 323.

### 1. False Arrest and Imprisonment

O'Brien alleges that she was falsely arrested and detained. O'Brien provides little support for this allegation, but claims that the defendants were "intent upon arresting her." [Doc. 1 at 5].

Although O'Brien cannot identify the arresting officers, she claims the defendants are liable for false arrest and imprisonment.

The defendants claim they are not liable because the arresting officers had probable cause to arrest and detain O'Brien.

Claims of false arrest and false imprisonment require proof of an intentional detention and the unlawfulness of the intention. *Frazier v. Clinton Cnty. Sheriff's Office*, 2008 WL 4964322, *22 (Ohio App.). To establish a claim for false imprisonment, the plaintiff must prove "by a preponderance of the evidence that [she] was intentionally detained or confined without lawful privilege and against [her] consent." *Id.*

An arrest based on probable cause results in lawful detention. *Id.*; *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 315 (6th Cir. 2007). Therefore, a finding of probable cause defeats

false arrest and false imprisonment claims. *Id*.

Facts and circumstances causing "a prudent man [to believe] that the arrestee had committed or was committing an offense" establishes probable cause. *Pheneger v. City of Lima*, 2007 WL 4556674, *4 (N.D. Ohio) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

During the demonstration, Officer Noon identified O'Brien as the person who struck Sergeant McGee's horse. Officer Noon yelled to Sergeant McGee, "that's the one that hit your horse," referring to O'Brien. [Doc. 14-1 at 21].

The arresting officer acted only after Officer Noon identified the alleged assailant in the crowd. Thus, O'Brien's arrest stemmed from an officer's observation of unlawful conduct of a person dressed similarly to O'Brien.

Based on the totality of the circumstances, the arresting officer reasonably believed O'Brien committed the offense at the time of arrest. Therefore, the officer had probable cause to arrest O'Brien. Lodging her after her arrest in the county jail was likewise lawful.

O'Brien thus cannot prevail on her claim of false arrest and false imprisonment.

### 2. Supervisory Liability

O'Brien claims that Chief Navarre and Sargent McGee are derivatively liable for the excessive force used against her.

To hold supervisory officers liable for the misconduct of subordinates, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (quoting *Carter v. Colerain Twp.*, 2007 WL 869727, *8 (S.D. Ohio)).

To prevail on a failure to supervise claim, O'Brien must show that the Chief Navarre and

5

Sergeant McGee disregarded a "known or obvious consequence of his action," which caused the constitutional violation. *Mize v. Tedford*, 2010 WL 1655835, *500 (E.D. Mich.). O'Brien has presented no evidence that Chief Navarre or Sergeant McGee were deliberately indifferent to O'Brien's constitutional rights by failing to supervise subordinate officers. O'Brien also fails to allege that Chief Navarre acted with deliberate indifference to his responsibilities. With regard to Sergeant McGee, O'Brien has not shown that he had any supervisory responsibilities *vis-a-vis* whoever arrested and tasered the plaintiff.

Plaintiff bears the burden of proving the affirmative link between the supervisor and the misconduct. *Rizzo v. Goode*, 423 U.S. 362 (1976). To meet this burden, a plaintiff must show that "a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy, supra*, 729 F.2d at 421.

O'Brien has offered no proof that either Chief Navarre or Sergeant McGee anticipated, directly caused or approved of her arrest or tasering. Under *Rizzo*, she cannot prevail on her claim of supervisory liability.

### 3. Failure to Train

O'Brien also claims that Chief Navarre and Sergeant McGee are liable for the excessive force used against her because they failed to train the arresting officers adequately.

A police officer may be liable for excessive force by other officers where that officer is responsible for training those officers, and his failure to do so adequately "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Carter, supra*, 2007 WL 869727, *6 (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Deliberate indifference to the duty to train exists where "inadequate training is so obvious, and the inadequacy [of the

current procedure] is likely to result in the violation of constitutional rights." *Id*. at 390. Thus, an officer responsible for proper training is liable where the officer "should have known, either because of a history of [constitutional rights] violations or because such likelihood was obvious, that [constitutional rights] violations were likely to result absent better training." *Id.* (citing *League of Women Voters of Ohio v. Blackwell*, 2006 WL 1580032 (N.D. Ohio)).

Sergeant McGee is not responsible for training. And, although Chief Navarre is responsible for training officers, O'Brien has not provided evidence to show that the training for which Navarre was responsible was inadequate.

Rather, O'Brien offers only conclusory statements to support her claim that Sergeant McGee and Chief Navarre failed to train the arresting officers. She suggests that I can infer deliberate indifference because Chief Navarre "made no special orders concerning the use of force on suspects within the public enclosure." [Doc. 14 at 15]. Even if he did so *vis-a-vis* the demonstration, that does not show that the officers whom he assigned to be present were not trained to perform their duties lawfully.

O'Brien merely alleges that unnamed officers violated internal police regulations on taser use by exceeding the four-taser limit. This is not sufficient to show that the officers were not trained as they should have been before they used their tasers.

O'Brien, accordingly, cannot hold either Sergeant McGee or Chief Navarre liable for her excessive force claim.

### 4. Municipal Liability

O'Brien claims that the City of Toledo is liable for the excessive force used against her because the arresting/tasering officers were implementing municipal polices and procedures. She

bases this claim on the fact that the Toledo Police Department had adopted a protocol limiting taser use to four taserings on a single individual.

O'Brien also brings attention to Chief Navarre's statement to a reporter that, the police "hit a home run" during the demonstration. [Doc. 17-3 at 19]. O'Brien claims that Chief Navarre's statement represents his implementation of a municipal policy supporting excessive force.

The defendants assert that they did not implement a policy that allowed for the use of excessive force in an arrest.

To hold a municipality liable under § 1983, the plaintiff must show that the city took a "particular action" that resulted in a violation of her constitutional rights. *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986); *see also Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658 (1978).

Under the Supreme Court's holding in *Monell, supra*, 436 U.S. at 694, a city is liable for an employee's action if the employee executed "a government policy or custom," or the employee's acts "may fairly be said to represent official policy." The plaintiff must show "that the municipality itself is the wrongdoer." *Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992); *Okla. City v. Tuttle*, 471 U.S. 808, 829 (1985).

Here, O'Brien cannot demonstrate that a City of Toledo policy or custom, "promulgated by a policymaker, was the moving force behind [her] alleged injury." *Stegall, supra*, 2006 WL 3846549, *403 (plaintiff failed to present any facts which would link the conduct of the individual officers to a policy of the City of Detroit or its police department, as required to show in a § 1983 municipal violation.); *Shamaeizadeh v. Cunigan*, 338 F.3d 535 (6th Cir. 2003).

To argue, as O'Brien apparently does, that noncompliance with that policy absent official sanction constitutes implementation of a municipal policy is illogical. A solo event of excessive

8

force does not amount to a policy permitting officers to use excessive force when making arrests.

Likewise, Chief Navarre's comment about hitting a home run in describing the success of his efforts to avoid a repeat of the riot and injuries during the earlier neo-Nazi demonstration manifests no approval, much less prior approval, of the actions O'Brien attributes to the arresting officers. His statement does not provide evidence that he made or instituted an unconstitutional policy prior to or on the day of the demonstration.

Here, as in *Jackson v. City of Brooklyn*, 2010 WL 4923492 (N.D. Ohio), O'Brien has failed to show that the City enacted a custom or policy that resulted in a depravation of her constitutional rights. Like the plaintiff in that case, O'Brien has not "come forward with *any evidence at all* of an official policy or custom" allowing officers to arrest individuals without probable cause, "or of a widespread pattern of tolerating the use fo excessive force against suspects." *Id*. at 20 (emphasis in original).

The City of Toledo is entitled to summary judgement on plaintiff's claims.

**Conclusion**

For the foregoing reasons, it is hereby:

ORDERED THAT:

Defendants' motion for summary judgement be, and the same hereby is granted.

So ordered.

/s/ James G. Carr
Sr. United States District